Filed 11/14/23  In re N.W. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.W., a Person Coming Under the Juvenile Court Law. | B327954 (Los Angeles County Super. Ct. No. 18LJJP00781A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>E.W.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephanie Davis, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

E.W. (mother) appeals the denial of her second petition filed under Welfare and Institutions Code section 388[1] and the termination of parental rights over her daughter, N.W. (minor) (born July 2017).  Mother contends that the juvenile court abused its discretion by denying her petition without an evidentiary hearing.  Because mother did not meet her burden of showing changed circumstances or that minor's best interests would be served by granting the petition, we affirm.[2]

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Apart from the fact that the termination of parental rights at the section 366.26 hearing followed the allegedly erroneous denial of mother's section 388 petition, mother raises no arguments on appeal as to the order terminating her parental rights.  Mother has therefore forfeited any independent challenge to that order.  (See *Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 455 ["[A]n argument not raised in the opening brief is forfeited on appeal"].)

2

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.     Referral and Investigation

In November 2018, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that a maternal aunt had recently entered mother and minor's apartment and witnessed mother's boyfriend sexually abusing minor, who was then 16 months old.[3]

Minor was taken to the hospital for a forensic examination. While there, the social worker noticed that minor had dirty feet, as well as red marks and blisters under her diaper.  Minor smelled as though she had not been bathed recently.

On November 16, 2018, minor was removed from mother's custody and placed with an extended family member.  The juvenile court ordered monitored visitation for mother.

## II.    Jurisdiction Petition and Adjudication

Four days later, DCFS filed a dependency petition under section 300, subdivisions (b)(1) (failure to protect) and (d) (sexual abuse).  Counts b-1 and d-1 alleged that minor was "sexually abused by . . . mother's [boyfriend] . . . who was a member of the household," and that mother "knew or reasonably should have known" about the abuse but "failed to protect" minor, including by "allow[ing] [her boyfriend] unlimited access to [minor]."

In March 2019, the juvenile court held an adjudication hearing.  Mother pled no contest to an amended petition, and the juvenile court sustained the allegations in count b-1.[4]  The

---

[3]     Mother's boyfriend was not minor's father.  The whereabouts of minor's alleged father is unknown, and he is not part of this appeal.

[4]     The original petition listed identical allegations under both count b-1, about mother's failure to protect, and count d-1, about the boyfriend's sexual abuse.  The amended petition removed any

juvenile court ordered reunification services for mother to include parenting classes and individual counseling focused on protective parenting and sexual abuse awareness.

## III.  Initial Reunification Efforts

Over the next six months, mother frequently visited minor and diligently participated in services.  By September 2019 she had progressed to unmonitored overnight visits.  On October 9, 2019, the juvenile court returned minor to mother's custody with family maintenance services, on the condition that mother cooperate with unannounced home visits from social workers.

On December 13, 2019, social workers made an unannounced visit to mother and minor's apartment.  Minor's diaper was sodden and sagging to her knees.

On January 17, 2020, another unannounced visit took place.  The visiting social worker found mother and minor in the apartment, along with five women and three men.  The home stank of marijuana and cigarette smoke.  When the social worker stepped out to call her supervisor, mother shut the blinds, locked the door, and turned up the volume on television.  The social worker knocked on the door, but mother refused to let her back into the home.  When the social worker returned later that same day, she could strongly smell marijuana from outside the apartment; the television was still blaring, but no one answered the door.

Four days later, the social worker interviewed two of mother's neighbors, who reported that they heard minor crying throughout the day and all night almost every night.  One neighbor expressed concern about any children in the home because of the strong smell of marijuana emanating from the

reference to mother from count d-1; the text of count b-1 was unchanged.

4

apartment door and the crowds of people coming and going at all hours.

The social worker returned to the apartment on January 27, 2020. As she approached, she could hear mother yelling over the television. When the social worker knocked and identified herself, she heard people moving around and telling each other to "hurry up." Through the window, the social worker saw four people shoving things into a backpack; mother took the screen off the bathroom window, another woman threw the stuffed backpack outside, and mother's guests went into an interior room. Only then did mother allow the social worker into the apartment.

Walking into the apartment, the social worker saw mother and minor—again wearing a soggy, sagging diaper—with another woman and toddler, as well as a man that mother introduced as her father. Mother denied that anyone else was in the home. The apartment still reeked of marijuana and cigarette smoke, and the social worker noted that the bathrooms were filthy; one was filled with used toilet paper, men and women's underwear, and other clutter. The bedroom floor was littered with used foil ash trays.

Throughout this period, mother had missed several on-demand drug tests. She had also stopped attending counseling.

Concerned with deteriorating conditions in the home, DCFS obtained another removal warrant. When they picked minor up from the apartment, her diaper was soaked through with urine.

## IV.  Supplemental Jurisdiction Petition and Adjudication

In February 2020, DCFS filed a supplemental jurisdiction petition under section 342, alleging that mother created an unsafe home environment for minor by exposing her to marijuana

use and unsanitary living conditions.[5]  At the detention hearing, the trial court ordered minor detained from mother with monitored visitation.

In June 2020, the juvenile court held an adjudication hearing on the section 342 petition.  Again, mother pled no contest to an amended version of the petition, which the trial court sustained.[6]  The trial court ordered further reunification services for mother, including a return to individual counseling to address protective parenting issues.  It also ordered mother to participate in random drug tests; if mother produced eight drug tests showing low or decreasing marijuana use, the trial court would allow unmonitored visitation.

---

[5]     Count b-1 of the supplemental petition alleged that mother "established an endangering and detrimental home environment" by "expos[ing] [minor] to marijuana use while the child was present in the child's home."  Count b-2 alleged that the family home "was found to be in an unsanitary condition with safety hazards," including "cigarette butts on the living room floor[,]" as well as a "master bathroom [that] was . . . unorganized and unsanitary[,]" with "an overfilled bag . . . found with used toilet paper[,]" a "toilet [with] urine and feces inside[,]" "clothes piled behind the door[,]" and "used toilet paper and cigarette butts on the floor."  Additionally, "[o]n two separate occasions . . . the child was found to be wearing a urine soaked diaper."

[6]     The amended petition struck count b-1.  Count b-2 was amended to include a reference that minor was "exposed to marijuana," and to remove many extraneous details about the unsanitary conditions of the home.  References to cigarette butts on the floor, piles of used toilet paper, and minor's "urine soaked diaper" were retained.

## V.   Continued Reunification Efforts

From minor's removal in February 2020 until the June adjudication hearing, mother's visits were sporadic. When the coronavirus pandemic briefly curtailed in-person visits, mother did call minor, but the calls were infrequent and terse. Mother often changed her phone number without telling minor's caregiver.

In July 2020, mother resumed individual counseling services and began visiting minor more frequently. But mother missed many drug tests. In January 2021, mother briefly enrolled in a drug program, but the program terminated her services after two months due to nonattendance. In May 2021, she again enrolled in the program and was again discharged after two months of infrequent attendance.

In July 2021, social workers visited mother's apartment and found it just as unhygienic as it had been 18 months earlier. Mother did not cooperate with attempts to schedule additional home visits and became combative with social workers and minor's caregiver.

In November 2021, mother again stopped attending individual counseling. In December 2021, mother did not visit minor at all; her phone calls were short and infrequent.

In January 2022, the juvenile court terminated reunification services. The tentative permanency plan was to place minor with her maternal grandmother, who had a close bond with minor and had expressed interest in adopting her.

## VI.   Postreunification Efforts

Mother started regularly visiting minor in June 2022 at a local park, and the visits went well. But problems resurfaced in September 2022, when DCFS became aware of video footage of mother in a physical altercation. When asked about this incident, minor's caregiver reported that mother and her friend

had a history of picking fights with people; on one occasion, mother asked the caregiver to pick minor up early from a visit so that mother could fight another woman at the park.

By late September 2022, mother started visiting less frequently. Mother reported that she was unemployed and looking for a new apartment. Mother's current apartment manager confirmed that mother continued to have serious problems maintaining a clean home. He reported that, in September 2022, he had received complaints from neighbors about a rotting smell emanating from mother's apartment; upon investigation, he found out that mother's dog had died in the apartment after being left alone for a week, and mother refused to dispose of it properly.

In October 2022, minor was placed in maternal grandmother's home, where she appeared to thrive. Mother continued to miss visits. At those visits she did attend, mother often video-called a friend and failed to fully engage with minor.

## VII.  Section 388 Petitions and Termination of Parental Rights

On January 11, 2023, mother filed a section 388 petition, in propria persona, asking the juvenile court to place minor with her or to reinstate reunification services. Mother attested that she had visited minor each week in November and December 2022, and that she had completed a drug program in September 2022. The juvenile court summarily denied the petition.

Two weeks later, mother filed a second section 388 petition, this time through appointed counsel, reiterating her requests for placement of the child or, in the alternative, for reinstated reunification services. Mother repeated that she had completed a six-month drug program, but added that she was now participating in individual counseling. She argued that reunification would be in minor's best interest because of their

"established bond and relationship" and because "mother . . . loves her daughter very much and wants to continue to provide her with . . . the familial support that every child deserves." Mother added that she "had been continuously working on her compliance with Court orders[.]"

The juvenile court again summarily denied mother's petition. The court stated that "mother has demonstrated perhaps changing circumstances, but not changed circumstances," and that mother had not demonstrated that the proposed change in placement order and reunification services would be in minor's best interest, particularly given mother's history of inconsistent, poor-quality visitation.

The juvenile court then terminated mother's parental rights over minor.

## VIII. Appeal

Mother timely appealed.

## DISCUSSION

## I. Applicable Law and Standard of Review

Under section 388, subdivision (a)(1), a parent or other interested party may petition the juvenile court to change, modify, or set aside a previous order in dependency proceedings. To be entitled to a full evidentiary hearing on the petition, the parent must make a prima facie showing of (1) a change in circumstances or new evidence and (2) that the child's best interests will be promoted by granting the petition. (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) "The petition must be liberally construed in favor of its sufficiency." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 (*Jasmon O.*).)

The summary denial of a section 388 petition without a hearing is reviewed for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460 (*Angel B.*); see also *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.) Thus, we must affirm "unless

9

the [juvenile] court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358 (*A.S.*).)

## II. Mother Did Not Make a Prima Facie Showing of Changed Circumstances

Mother argues that because she had completed a six-month drug treatment program and embarked on another round of individual counseling, she was entitled to a hearing on her section 388 petition. We conclude that the juvenile court did not abuse its discretion by finding that mother's petition stated no new evidence or change of circumstances, and by denying the petition without a hearing.

"To support a section 388 petition, the change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*).) A mere showing of changing circumstances is insufficient. (*A.S.*, *supra*, 180 Cal.App.4th at p. 358.) Thus, a parent's relatively recent efforts to achieve or maintain sobriety, following a long history of failed attempts, is generally not sufficient to establish changed circumstances. (See *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642 [father's efforts including completing a substance abuse program and attending parenting classes "were not prima facie evidence of a change in circumstances" in light of his previous extensive treatment and history of relapses].)

Mother's petition did not make the necessary prima facie showing of changed circumstances to trigger a full evidentiary hearing. That mother had, after three years of unsuccessful attempts, finally completed a six-month drug treatment program, and had gone back into individual counseling after years of inconsistent or nonattendance, were evidence of changing—as opposed to changed—circumstances in mother's life. Given

10

mother's extensive history of positive or missed drug tests and her inconsistent contact with minor for over a year (including during the entirety of the family reunification period), her petition only demonstrated that mother was making progress that may have eventually led to changed circumstances. But "[c]hildhood does not wait for the parent to become adequate." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 (*Marilyn H.*).)

Additionally, mother's petition did not address the circumstances at the heart of the most recent petition leading to minor's removal and dependency—namely, mother's apparent inability to maintain a safe and hygienic home environment for minor. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531 ["It is only common sense that in considering whether a juvenile court abuses its discretion in denying a section 388 motion, the gravity of the problem leading to the dependency, and the reason that problem was not overcome by the final review, must be taken into account"].)

Mother's renewed participation in drug services and individual counseling is certainly laudable, if untimely, but it does not shed any light on whether she had changed her attitudes and behaviors regarding cleanliness and hygiene. And the record indicates that, as recently as four months before the petition was filed, mother's home had further deteriorated due to her unwillingness or inability to properly dispose of the body of a dog that died alone in the home, apparently due to mother's neglect. This further supports the juvenile court's finding that mother had not made enough progress on the issues causing minor's dependency to warrant a finding of changed circumstances.

Finally, the recency of mother's efforts distinguishes the facts alleged in the petition from those in cases where a parent's period of sobriety and completion of classes were held sufficient to make a prima facie showing of changed circumstances.

11

For example, in *In re Aljamie D.* (2000) 84 Cal.App.4th 424 (*Aljamie D.*), the mother "had completed numerous educational programs and parenting classes, . . . had tested clean in weekly random drug tests for over two years . . . [and] had visited consistently with the children and continued to have a strongly bonded relationship with them." (*Id.* at p. 432.) And in *In re Hashem H.* (1996) 45 Cal.App.4th 1791 (*Hashem H.*), the mother's section 388 petition alleged that "her continuous participation in individual therapy for more than 18 months which was so successful that her therapist recommended [her son] be returned to her custody," her "regular and consistent visitation with her son for more than a year, her participation in conjoint counseling with him, her stable employment and religious affiliation, and her current ability to provide a home for [her son] on a full-time basis." (*Hashem H., supra,* at p. 1799.) The allegations in each of these cases—sustained for significantly longer periods than that alleged here by mother—constituted prima facie showings of changed circumstances. (*Aljamie D., supra,* 84 Cal.App.4th at p. 432; *Hashem H.,* at p. 1799.)

Under the circumstances of this case, we cannot say that the juvenile court's conclusion that mother's petition failed to state new evidence or a change of circumstances was "an arbitrary, capricious or patently absurd determination." (*A.S., supra,* 180 Cal.App.4th at p. 358.) Accordingly, the court did not abuse its discretion.

## III. Mother Did Not Make a Prima Facie Showing That Granting the Petition Was in the Child's Best Interests

Additionally, a successful section 388 petition "must . . . describe specifically how the petition will advance the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) "[A] primary consideration in determining the child's best

interest is the goal of assuring stability and continuity." (*Angel B.*, *supra*, 97 Cal.App.4th at p. 464.)  And once family reunification services are terminated, the child's need for permanency and stability take precedence over the parent's interest in reunification.  (*See Marilyn H.*, *supra*, 5 Cal.4th at pp. 309–310.)

Here, mother's petition was filed one year after the termination of family reunification services.  The petition did not describe how the various relief sought by mother—including returning minor to mother's custody or reinstating reunification services—would benefit minor and outweigh her "constitutional and statutory interest in stability" (*Jasmon O.*, *supra*, 8 Cal.4th at p. 421) and permanency.  In light of mother's history of inconsistent visitation, and her failure to fully engage with minor at those visits she did attend, the juvenile court was entirely justified in finding that she had failed to show that the modification proposed in the section 388 petition was in minor's best interest.  And mother's stated desire to "provide [minor] with . . . the familial support that every child deserves" was insufficient to make a prima facie showing.

Therefore, we find no abuse of discretion in the juvenile court's summary denial of mother's petition.

13

**DISPOSITION**

The order denying mother's section 388 petition is affirmed. As mother has provided no independent basis to reverse the order terminating parental rights, that order is also affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT